UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.C.,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br><br>    Defendant. | Case No. 17-cv-04997-NC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff K.C. seeks judicial review of the Commissioner of Social Security Andrew M. Saul's[1] denial of his application for disability benefits under the Social Security Act. Dkt. No. 37. Plaintiff argues that the Administrative Law Judge ("ALJ") erred in failing to find that K.C.'s mental impairments were severe; improperly rejected medical evidence; improperly rejected K.C.'s testimony; and improperly rejected lay witness testimony. The Court FINDS that the ALJ did not err in any of these ways. Accordingly, the Court DENIES K.C.'s motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment. The Court AFFIRMS the decision of the ALJ.

---

[1] On June 4, 2019, the United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security. *See* P.N. 94, 116th Congress (2019). Accordingly, the Court substitutes Saul for the defendant and directs the Clerk of the Court to update the case caption to replace former Commissioner Nancy H. Berryhill. *See* Fed. R. Civ. P. 25(d).

## I. BACKGROUND

### A. Claimant

K.C. was born in 1959 in Burma. AR 24. He has a high school education and formerly worked as an auto mechanic. AR 54, 195. He stopped working as an auto mechanic because he was too fatigued for the pace of the job, had difficulty getting along with supervisors, and felt pressured to work more quickly than he was able to. AR 55, 57, 66. He sometimes had difficulty sleeping due to thinking about Burma and feeling afraid. AR 67. He alleged disability beginning in February 2014 based on a combination of impairments including depression, anxiety, post-traumatic stress disorder, cirrhosis of the liver, hepatitis B, and right lateral epicondylitis (tennis elbow). AR 193–200. K.C. is on the waiting list for a liver transplant. AR 288.

### B. Procedural History

K.C. filed a social security disability claim on October 27, 2014, alleging disability beginning February 28, 2014. AR 171. The Social Security Administration denied his claim initially and again upon reconsideration. *Id.* An ALJ hearing was held in February 2016. AR 44. The ALJ denied K.C.'s claim for disability benefits. AR 27. The Social Security Administration Appeals Council denied review of the ALJ's decision. AR 2–6. K.C. now seeks judicial review of the ALJ's decision. *See* 42 U.S.C. §§ 405(g) and 1383(c). Both parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). *See* Dkt. Nos. 10, 24, 28.

### C. Undisputed Medical Evidence

#### 1. Mental Impairments

Dr. David Dahl evaluated K.C.'s mental health in December 2014. AR 358. He diagnosed K.C. with major depressive disorder and posttraumatic stress disorder. AR 393. He noted K.C.'s nightmares, conflicts with his grown children, difficulty making decisions, and low average intelligence. AR 391. Dr. Dahl indicated that K.C. could usually take care of personal hygiene and that K.C. had not received any inpatient or outpatient psychiatric treatment. AR 398–390. Dr. Dahl reported significant psychomotor

retardation and some paranoia, dysphoric mood, and flat affect. AR 391. Dr. Dahl opined that K.C. could not handle his own funds. AR 394. State agency consultant Dr. H. Bilik, Psy.D. reviewed the record and noted that K.C. had no history of mental health treatment. AR 80.

### 2. Physical Impairments

K.C. has a history of tennis elbow. AR 309–310. Dr. Jay Ladenheim examined K.C. June 2012 and noted his history of hepatitis B and cirrhosis which were relatively stable with medication. AR 314. He opined that K.C. should avoid heavy exertion and lifting more than 20 pounds due to his persistent fatigue. AR 316. Dr. Burton Weaver also noted K.C.'s chronic fatigue, headaches, and memory issues in June 2012. AR 322–23. In May 2013, Dr. Landenheim opined that K.C. should not lift over 25 pounds. AR 355. In November 2014, Dr. Landenheim found that K.C.'s fatigue and headaches could be a result of depression or of his liver disease. AR 362. In March 2015, K.C. was treated for chronic headache and low blood pressure. AR 440. In December 2015, Dr. Landenheim reported that K.C. continued to have fatigue, headaches, and a loss of interest in activities. AR 483, 516. Dr. Landenheim opined that K.C. could lift up to 20 pounds occasionally. AR 517. State agency consultant Dr. Dann reviewed K.C.'s medical records and noted that K.C. was on the liver transplant list but that his good residual liver function would not place him high on the list. AR 83.

### D. The ALJ Hearing

At the hearing, K.C. was represented by counsel Sonya Arrelano and was assisted by a Cantonese interpreter. AR 44. Harlan Stock, a vocational expert, also testified. AR 44.

K.C. testified that he came to the United States from Burma in 1979. AR 52. His last job was as an auto mechanic, but he stopped working in 2014. AR 54. He stopped working because he had trouble getting along with his supervisors, he felt pressured to do more work more quickly, his supervisor was very critical, and he was too fatigued to keep up with the pace of work. AR 55–57. He could not work as quickly as his coworkers. AR

66. He needed breaks to rest every 15 to 30 minutes. AR 57. He frequently got headaches. AR 58. He used to fish and play golf often, but he has only fished once since filing for disability and only played golf four or five times, the last time playing only three holes. AR 59, 62. He had difficulty with focus and memory. AR 66. He had difficulty sleeping because he would think about his past in Burma and feel scared. AR 67. He was reluctant to discuss these experiences with a therapist. AR 67–68.

A vocational expert also testified at the hearing. The VE testified that a person limited to medium exertional work could perform K.C.'s past work as an auto mechanic, but that a person limited to light work could not. AR 71–72. The VE testified that K.C. had skills from past work that would transfer to the light exertional work level. AR 72.

K.C.'s wife, W.L., provided testimony via a questionnaire. TR 202. She stated that K.C. is often fatigued, has headaches, has difficulty sleeping and wakes up from nightmares, and has trouble concentrating. TR 202–205. She also stated that K.C. no longer socializes and has a short temper. TR 205–206. She checked the boxes for "lifting," "walking," "stair climbing," and "following instructions" as abilities affected by his impairments. TR 207. She stated that he is depressed and talks about death a lot. TR 208.

### E. The ALJ's Finding

To qualify for disability benefits under the Social Security Act, a claimant alleging disability must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 48 U.S.C. § 1382c(a)(3)(A). An ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)(1). If the ALJ finds the claimant disabled or not disabled at one of the steps, the ALJ makes her determination and does not proceed in her evaluation. 20 C.F.R. § 416.920(a)(4).

At step one, the ALJ determines whether the claimant engaged in any substantial gainful activity since applying for disability under 20 C.F.R. 404.1520(b). At step two, the

4

ALJ determines whether the claimant suffers from any severe impairments under 20 C.F.R. 404.1520(c). At step three, the ALJ determines whether the claimant has an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404(P), Appendix 1. Next, the ALJ determines the claimant's residual functional capacity (RFC). The RFC is an individual's ability to do physical and mental work activities on a sustained basis despite limitations from impairments, including impairments that are not severe. 20 C.F.R. 414.1520(e); 404.1545. At step four, the ALJ determines if the claimant has the RFC to perform any of his or her past work under 20 C.F.R. 404.1520(f). Finally, at step five, the ALJ determines whether the claimant is able to do any other work considering his or her RFC, age, education, and work experience. 20 C.F.R. 404.1520(g).

### 1. Steps 1–3

At step one, the ALJ found that K.C. had not engaged in substantial gainful activity since February 28, 2014, the alleged onset date. AR 29.

At step two, the ALJ found that K.C. had the following severe impairments: cirrhosis of liver and gastric varices. AR 29. The ALJ found that K.C.'s diagnosis of Hepatitis B was non-severe because K.C.'s treatment records repeatedly indicated that he was on anti-viral therapy and his viral load was undetectable, and because the records did not document any symptoms or limitations caused by the Hepatitis B. AR 30. The ALJ also found that K.C.'s epicondylitis (tennis elbow) and splenomegaly (enlarged spleen) were non-severe. AR 30.

The ALJ next found that K.C.'s depression, fatigue, anxiety, and PTSD considered singly and in combination did not cause more than minimal limitation to his ability to perform basic work activities. AR 30. The ALJ noted that K.C. had not sought any mental health treatment for these impairments. AR 30. The ALJ considered four functional areas in making this determination: activities of daily living, social functioning, concentration, and episodes of decompensation. The ALJ found that K.C. had only mild impairment in the first three areas. AR 30–31. The ALJ found no evidence in the record as to any

episodes of decompensation or any hospitalization for a mental impairment. AR 31. In sum, the ALJ then found that K.C.'s mental impairments were non-severe.

At step three, the ALJ found that K.C. did not have any impairment or combination of impairments that met or medically equaled the severity of those listed in 20 CFR Part 404, Subpart P, Appendix 1. AR 31.

### 2. Residual Functional Capacity

Before proceeding to steps four and five, an ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.945(a)(4)(iv). To determine RFC, an ALJ considers all of the claimant's severe impairments collectively. *Id.* § 416.945(a)(2). Here, the ALJ determined that in light of his collective severe impairments, K.C. had the RFC to perform the full range of medium work as defined in 20 C.F.R. 404.1657(c). AR 33.

### 3. Steps 4–5

At step four, the ALJ found that K.C. was capable of performing his past relevant work as an auto mechanic as generally performed. AR 38. As such, the ALJ did not proceed to step five and the ALJ found that K.C. had not been under a disability from February 28, 2014 through the date of his decision. AR 38.

## II. LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance"). Even when the ALJ commits legal error, the decision must be upheld if the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "[a]

reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir.1995).

## III. DISCUSSION

### A. The ALJ Found the Plaintiff's Mental Impairments to be Non-Severe

A "severe" impairment significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An ALJ evaluates an impairment in four areas to determining its severity: activities of daily living, social functioning, concentration, and episodes of decompensation. 20 C.F.R. § 404.1520(c)(3). If the ALJ rates the degrees of limitation in the first three areas as "none" or "mild," he will generally conclude that the impairment is non-severe unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. 20 C.F.R. § 414.1520a(d)(1).

K.C. argues that the ALJ erred because his mental impairments should have been classified as severe. AR 30–31. As to activities of daily living, the ALJ found that K.C. had only "mild" limitation because he could take care of self-bathing and personal hygiene, and because he had not done chores or housework even prior to the alleged onset of his disability. AR 30. As to social functioning, the ALJ again found only "mild" limitation because K.C. reported problems getting along with family, friends, and neighbors but also reported playing golf, fishing, attending parties, and did not report difficulties with social functioning to his treating doctors. AR 31. As to concentration, the ALJ again found only "mild" limitation because the claimant's function report noted no difficulties with completing tasks or with concentration and because psychiatrist Dr. Dahl stated that K.C. could focus attention during his interview. AR 31. As to episodes of decompensation, the ALJ found no evidence that any had occurred. AR 31.

7

In making this determination, the ALJ noted that K.C. had not sought any treatment for any mental health impairments and that there was no evidence that his mental health impairments caused even minimal limitation on his ability to perform basic work activities. AR 30. The ALJ's decision as to the severity of K.C.'s mental impairments was also based on his weighing of the medical evidence and of the testimony provided. The Court discusses each of these bases for the decision in turn below.

**B. The ALJ Properly Weighed the Medical Evidence**

Ninth Circuit precedent distinguishes three types of physician opinions: (1) those written by physicians who treat the claimant (treating physicians); (2) those written by physicians who only examine the claimant (examining physicians); and (3) those written by physicians who neither treat nor examine the claimant (non-examining physicians). *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, a treating physician's opinion carries greater weight than that of an examining physician, and an examining physician's opinion carries greater weight than that of a non-examining physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2011). An ALJ must provide "clear and convincing reasons that are supported by substantial evidence" to reject uncontradicted opinions of a treating or examining doctor. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). Contradicted opinions of a treating or examining doctor may be rejected by "specific and legitimate reasons that are supported by substantial evidence." *Id.* The ALJ must "give good reasons" for its decision as to the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Cmm'r, Soc. Sec. Admin,* 533 F.3d 1155, 1164 (9th Cir. 2014).

**1. Dr. Landenheim**

Here, the ALJ gave "little weight" to the opinion of K.C.'s treating physician, Dr. Landenheim. AR 25. Dr. Landenheim treated K.C. from June 2012 through December 2015 for his Hepatitis B, cirrhosis, hypertension, and gastrointestinal problems. AR 34. Dr. Landenheim told K.C. not to lift anything over 25 pounds, an opinion which the ALJ

8

afforded little weight because Dr. Landenheim provided no rationale for the limitation and because it was inconsistent with Dr. Landenheim's note that K.C. was "clinically doing well." AR 34. Similarly, the ALJ afforded little weight to Dr. Landenheim's statement that K.C.'s fatigue was "disabling and prevents him from working" because Dr. Landenheim's other treatment notes refer to K.C.'s fatigue as "mild." AR 35. Dr. Landenheim also completed a report in January 2016 stating that K.C.'s symptoms would frequently interfere with attention and concentration and that K.C. could only occasionally lift up to 20 pounds and never lift 50 pounds. AR 36. The ALJ afforded this statement little weight because it contained no narrative or rationale for the restrictions and included no objective basis or explanation. AR 36.

Dr. Landenheim's opinion was contradicted by state agency consultants C.R. Dann and D. Pong, who found that K.C. could lift 25 pounds frequently.[2]

These inconsistencies constitute conflicts in the medical record, which are the ALJ's responsibility to resolve. *Carmickle*, 533 F.3d at 1164. The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence to afford little weight to Dr. Landenheim's contradicted opinion and thus did not err in doing so.

**2. Dr. Dahl**

The ALJ also gave "little weight" to K.C.'s consultative examiner Dr. David Dahl, Ph. D. AR 37. Dr. Dahl diagnosed K.C. with major depressive disorder and posttraumatic stress disorder and assigned K.C. a global assessment of functioning ("GAF") score of 35. AR 37. He opined that K.C. would be markedly impaired in his abilities to follow instructions, maintain concentration, interact with co-workers and the public, maintain regular workplace attendance, and perform work activities without special supervision. AR 37. The ALJ afforded this opinion little weight because it was based primarily on

---

[2] Limitations on the amount of weight that K.C. could safely lift are significant here because if K.C. could not lift more than 20 to 25 pounds, he would be limited to "light" exertional level work and his past relevant work as an auto mechanic is classified as "medium" exertional level. C.F.R. § 404, Subpart P, App. 2, Rule 202.06.

9

K.C.'s self-reported assertions rather than treatment records. AR 37. The ALJ also found that Dr. Dahl's opinion was inconsistent with his own observations during the examination, including Dr. Dahl's notes that K.C. was coherent, organized, and focused, and that his judgment was intact and unimpaired. AR 37. The ALJ found that the GAF score of 35 was unsupported and was inconsistent with K.C.'s lack of mental health treatment and with Dr. Dahl's observations. AR 37. Finally, the ALJ noted inconsistencies between Dr. Dahl's report and K.C.'s hearing testimony regarding the language in which the examination was administered, suggesting possible unreliability. AR 37.

Dr. Dahl's opinion was contradicted by state agency psychological consultants H. Bilik, Psy.D., and L. Colsky, M.D., who opined that after November 1, 2014, K.C.'s mental impairments were non-severe. AR 37–38. The ALJ afforded significant weight to these opinions because they were consistent with K.C.'s lack of mental health treatment and his lack of more than occasional subjective complaints about mental health symptoms to primary care providers. AR 38.

Again, these inconsistencies constitute conflicts in the medical record, which are the ALJ's responsibility to resolve. *Carmickle*, 533 F.3d at 1164. The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence to afford little weight to Dr. Dahl's opinion and thus did not err in doing so.

### C. The ALJ Properly Weighed Testimony

#### 1. Plaintiff's Testimony

When assessing a disability claimant's testimony regarding the subjective intensity of symptoms, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first "determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). If the claimant has presented evidence of an underlying impairment and there is no affirmative evidence of malingering, the ALJ must give

10

"specific, clear and convincing reasons" to reject the claimant's testimony about the severity of his symptoms. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks omitted). Even if the claimant's testimony suggests he may have some difficulty functioning, it can still "be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113 (citing *Turner v. Comm'r of Soc. Sec.*, 513 F.3d 1217, 1225 (9th Cir. 2012)).

The ALJ found that K.C.'s symptoms are not as severe as alleged and found that he may be less than credible. AR 34. The ALJ noted that K.C.'s doctor called K.C.'s fatigue "mild" but that K.C. alleged that he stopped working because he was "getting sleepy." AR 33. He also found that K.C.'s failure to seek counseling indicated that his mental impairments were less severe than alleged. AR 33. The ALJ noted that K.C. attributed part of his leaving his job to difficulty using new technology, which tended to suggest that K.C. did not leave the position because of disability. AR 33. Though the ALJ did not find evidence of malingering, he gave specific, clear and convincing reasons to doubt K.C.'s testimony about the severity of his symptoms and thus did not err. *Burrell*, 775 F.3d at 1136.

### 2. Lay Witness Testimony

To reject the opinion of a lay witness, the ALJ must provide specific reasons that are germane to that witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Lay witness testimony "cannot be disregarded without comment." *Id.*

The ALJ accorded little weight to the written testimony provided by K.C.'s wife,

11

W.L. AR 24. The ALJ noted multiple inconsistencies between W.L.'s report and K.C.'s hearing testimony. AR 34. The ALJ also gave little weight to W.L.'s report because she is not a medical source and made only general statements with no quantification. AR 34. These are specific reasons, germane to W.L., for affording her testimony little weight; thus, the ALJ did not err in doing so. *Nguyen*, 100 F.3d at 1467.

## IV. CONCLUSION

The Court FINDS that the ALJ did not err in finding K.C.'s mental impairments to be non-severe and did not err in his weighing of the medical evidence or testimony. The plaintiff's motion for summary judgment is DENIED and the defendant's cross-motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: July 1, 2019

NATHANAEL M. COUSINS
United States Magistrate Judge